Next case is a Gay v. Creditinform. Mr. Francis. Thank you, your honor. May it please the court, my name is Jim Francis, and along with my co-counsel, David Searles, who is seated at the council table. We represent the appellant, Mary Gay, in this matter. I request three minutes for rebuttal. We seek the court's reversal of the district court's order granting intersections his motion to stay and ordering arbitration on an individual basis. In the alternative, we request that the court find that the class action waiver at issue in the intersections agreement is unconscionable. And as did the New Jersey Supreme Court in the case of Muhammad v. County Bank, sever the clause and order that this case be sent to arbitration on a class action basis. There are two bases for the relief we seek. One is a practical basis and one is a statutory basis. I'm going to begin with the practical basis because it's been the subject of numerous recent circuit court decisions, and the Supreme Court from New Jersey and the Superior Court of Pennsylvania since this case was filed. Given the fact that this case presents an economically small value claim, the intersection arbitration agreement's class action waiver as well as the other waivers are unconscionable for the very simple reason that if the district court's order is upheld, this case is over. It is the death knell of the CROA, the Credit Repair Organizations Act claim, and the Pennsylvania Credit Services Act claim in this case. Why do you say the case is over? Why, Your Honor? Because this case, the value of Ms. Gay's claims, as believed by the intersections agreement, is limited to between $5 and $50. There is not one member of the consumer bar who will take this case to arbitration. Can't she recover attorney's fees and costs? Not under this agreement. This agreement limits her ability to recover only that which she paid, which is an amount between $5 and $50. It's one of the reasons that the contract— But doesn't the act itself provide for the recovery of attorney's fees and costs? Both acts do, provided that there's not a waiver of that act. Here, there is a waiver in the contract which limits her ability to recover only that which she paid. She cannot recover actual damages. She cannot recover punitive damages. Both items that are guaranteed by the statutes. And she cannot recover attorney's fees under this contract. So let me ask you this question, then. Are we concerned at this stage of the proceeding with what she can recover? Or are we concerned only with whether or not there's mandatory arbitration? Now, what the arbitrator— Then the arbitrator could say, well, that provision is not enforceable. Something like that. In other words, what's before us at this point? I think what's before the court is everything in the contract for several reasons. Number one, we have a specific statute which is unlike any of the other statutes referenced in the briefs. Under the Credit Repair Organizations Act, a federal court cannot give any effect to a contract if any of its provisions are void. That is statutory language, federal statutory language, on the same level of authority— Counsel, let me interrupt you. I'm not sure that you're answering Judge Greenberg properly. He was suggesting that the issue before us, whether there was an error in ordering this to arbitration. Now, isn't that the correct issue? It is, Your Honor, but as part of that issue— Well, I think if that is the issue, I think you have to use that as a major premise. The issue in this court is whether the court erred in ordering this matter to arbitration. It is our belief and our argument that this is error, and then you will give us your argument. Now, isn't that a fair way of approaching this? I think it is, Your Honor. The problem is the court didn't just order that the case go to arbitration. The district court enforced a class action waiver within the contract, so it didn't just do that. It went beyond the arbitration clause and ordered that the case may not proceed as a class action. The problem, Your Honor, with that is a very practical one. We cannot go to the AAA arbitration with a class action waiver. Order that the case could not proceed as a class arbitration action or as a class court action, because it can't proceed at all in court. So if it can't proceed at all in court, then it follows it can't proceed as a class action. What specifically did the court say? That the court must go to arbitration on an individual basis. It's not going on a class action basis. And the problem with that is the AAA rules do not permit a litigant to litigate in arbitration where there is a waiver in the contract. So this litigant is stuck in an endless circle. If this court upholds the district court's ruling, then we go to arbitration. They will not let this claim through the door on a class basis. Maybe our decision would be, and I'm not saying it, but maybe it would be that, well, it can be arbitrated, but that the waiver of the class action is not barred, is not effective. Your Honor, we would accept that, and that's why I suggested in the alternative initially, that is a form of relief that we would accept. We would be happy to take this case into arbitration on a class action basis. The problem is the reason we had to file it in district court is because, as I said, under Section 3 of the AAA rules, we cannot get in and litigate a case on a class action basis where the contract contains a waiver. So Your Honors are the only hope that this litigant has regarding the class action waiver. But to get us to do that, you've got to show that this agreement was unconscionable. Correct, Your Honor. And to further answer Judge Greenberg's earlier question to me, what are we doing here, you can look at the unconscionability of the class action waiver. And, in fact, other courts and the district courts of the Third Circuit have done so. Let's look now at the Virginia law and Pennsylvania law on unconscionability. Will you address the argument on that basis? Do you concede that either Virginia or Pennsylvania law applies in this case, or both? We do not. We concede only that Pennsylvania law would govern this case for two reasons. All right. First, we think that the operative case that should guide Your Honors is Thibodeau. Just about a year ago, in fact, less than a year ago, the Superior Court was confronted with a small value claim class action and an arbitration clause. And the Superior Court ruled that such clauses, when in the context of a small value claim, are unconscionable. We've argued that the court should follow Thibodeau. It is the most recent statement from an appellate court in Pennsylvania on Pennsylvania law regarding the same type of waiver in this case. The only difference is the claim in Thibodeau is $9.95 a month. The claim here is $4.95 a month. So whatever policy rationale was before the Pennsylvania Superior Court on Thibodeau, that is stronger here. Regarding why Pennsylvania law applies, even if you accept that we have to get into a conflict of law analysis, the plaintiff is from here. The contract was signed here. Pennsylvania choice of law would hold that Pennsylvania law applies here. Three separate circuits within the last year have all followed the same analysis that Thibodeau followed and has basically held uniformly. Schroeder in the Ninth Circuit. You're using Thibodeau to bootstrap your argument. You're saying we should follow Thibodeau because you like the outcome of Thibodeau. I'm not saying that, Your Honor. That's what I've heard you say. But really, isn't Pennsylvania's law in this question that we will apply the choice of law, the party's choice of law, which under this agreement, they agreed to have this contract interpreted under Virginia law, unless there's an exception. I think of the two exceptions, the exception that could apply would be that the application of the Virginia law would be contrary to a fundamental policy of Pennsylvania that's materially greater than Virginia. It is, Your Honor. Isn't that really what the law is? It is, Your Honor. And the reason that we can't look at Virginia law is because Virginia, applying Virginia law leads to the same unconscionability of the class action waiver because it doesn't permit this case to be litigated on a class basis. So Pennsylvania law and appellate courts in Pennsylvania have announced the importance of the class action vehicle. Pennsylvania law does not support, even with this particular choice of law clause, for an unwitting consumer to give up their right to bring a class action because they're not aware that by agreeing to the Commonwealth of Virginia rules, they can't bring a class action. Pardon me. They don't allow class actions. Well, the law of the Commonwealth of Virginia, as appellate has argued, does not permit the plaintiff to bring a class action. And it's the same unconscionability analysis. Whichever way you go, this plaintiff is out of court completely because there's no way to bring a class action basis. Where is it cited in your brief? Thibodeau is cited in our reply brief at pages 13, 14, and 15 because it's a fairly recent case. But the unconscionability analysis is the same. That is what is grounded in Pennsylvania law. That applying this waiver to this value claim puts this woman out of court because nobody will litigate this claim individually in arbitration. The 9th Circuit has agreed with that, recently in Troyer. The 11th Circuit in Dale agreed with that. The New Jersey Supreme Court in Mahomet just a year ago found the same thing. In small value claims, class action waivers are unconscionable because they put the claim out of court because nobody litigates a $50 claim or a $5 claim on an individual basis in arbitration. What exactly does this defendant do? Somebody gives them, what is it, $5 a month?  What do you get for it? Well, we would argue that you don't really get anything. What they would argue is that you get... Well, you don't pay much for it. Well, it depends on how long you have it. It's usually a contract that renews itself every month. What is it supposed to do? It's supposed to help improve your credit by giving you credit monitoring. And that's the very type of product that's covered by the credit repair, both credit repair statutes. Is this different? I noticed some... I see these ads. I can't help but see them. Where it says, oh, boy, you're in big trouble when you listen to what we tell you. And in two years, you'll own the Taj Mahal. You know, it's kind of... What are those companies? You know, the guy says, it doesn't matter how much you owe. You do what I tell you on your current income. You'll be debt-free. I'm sort of skeptical of those things. That's not this. I would think Your Honor should be skeptical, and that is not this. This is a credit monitoring product to advise consumers or to ostensibly advise consumers about information related to their credit rating so they can improve their scores, how to dispute their credit. It's just another version, albeit certainly, I would agree, not that type of situation that Your Honor is mentioning. But they are covered. We cited a bunch of cases in our brief as similar products. Credit monitoring products are covered. Counsel, I'm waiting for you to address the Supreme Court. You've referred to, Senator Doe, a Superior Court case. I'm waiting for you to address the Sally case because that's a case that emanated from a request for a certification from our court regarding the issue of unconscionability and arbitration agreement. So let's hear you talk about that case. Your Honor, we don't think Sally has much applicability here because, number one, it says nothing about class action waivers, which is our real problem here. Number two, we are not saying that. You are saying that the waiver is void because it's unconscionable. Well, no matter how you cut it, you come to the question is what does unconscionable mean? And that was in an arbitration setup. And that is what you're talking about. And that's what the Supreme Court of Pennsylvania and Pennsylvania Supreme Court did not exactly endorse Thibodeau, did it? Well, I don't know that it didn't exactly endorse Thibodeau. It's presented with a different fact pattern. It's presented with a predatory loan situation. And in Sally, one of the main issues before the Supreme Court was whether the lack of mutuality of remedies would be a basis to find a contract unconscionable. That is not what we're arguing here. This is not a fact pattern that arises under Sally. Nor are we arguing that a class action waiver can never in any instance be upheld. But when it applies to a small value claim, unlike the TILA claim in Johnson, where the plaintiff could still receive $1,000 statutory damages and still recover attorney's fees in the arbitral forum, this is a very different fact pattern. It's when it's a very, very small value claim, then there's unconscionability because the person at the end of the day is out of court. They cannot litigate their claims anywhere because nobody will pursue a $50 claim in arbitration. That is our position. And that was not before the court in Sally. If anything, Sally implicitly endorses our reading, which is that any contract which would put somebody out of court would be unconscionable. But that was not the case in Sally. And that is not what the Supreme Court looked at. The New Jersey Supreme Court did look at that in Muhammad, the very same issue, small value claim, class action waiver, out of court. One of the interesting things that we submitted to the court by way of 20HA was the Schroeder opinion from the Ninth Circuit, holding that class action arbitrations actually further the FAA. They were applying specific California law. That case has no bearing on a case where we're considering Pennsylvania law. Pennsylvania has no statute comparable to the statute discussed extensively by the Ninth Circuit, the California statute. Your Honor, the only law that is before the court regarding Pennsylvania, regarding Pennsylvania law in this scenario, is Thibodeau. It's a Superior Court decision which holds unconscionability occurs in a small value class action when there's a class action waiver. That is the law of Pennsylvania. Did not Lytle follow Thibodeau in the case of London? I think Thibodeau followed Lytle, Your Honor. It followed Lytle. Yes. All right. But a fortiori, in Sally, the Supreme Court criticized the extent and breadth of Lytle. Correct, Your Honor. Which was a case relied upon by the Superior Court in Thibodeau, right? It was relied upon, but not for the reason that we're at issue before the court on, which is the class action waiver on a small value claim. The only case that has addressed that is Thibodeau, and no other court has touched that. Sally doesn't touch that issue. Mr. Francis, we'll have you back on the floor. Thank you, Your Honor. Mr. Fine. May it please the court, my name is David Fine. I represent the Appellee Intersections Incorporated. I'd like to begin, if I might, by addressing several of the points that Mr. Francis raised with the court. And the first is by way of an observation, which is that this case, from the appellant's standpoint, has been something of a moving target. They began with an argument that there was, in fact, an inherent conflict between the CROA, the Credit Repair Organization Act, and arbitration. They've completely abandoned that now. Now, here are our arguments. For the very first time, they're espousing an argument that the class action waiver in itself is unconscionable and should be severed somehow so that the arbitration can go forward as a class action. That's not an argument that they've made before, and it's an argument of last resource, or recourse, rather. The reason for that is this, and it's a very practical reason. After the decision in Basel, the Supreme Court's decision in Basel, the AAA, which would in fact govern this arbitration, has mandated that unless there is a provision in a contract that says that there may be class arbitration, or there is a court order that says that there shall be class arbitration, it will not administer as class arbitration. Thus, as a practical matter, even if this court were to strike out that part of Judge Giles' order that said on an individual basis, this would go forward in precisely the same way. I'd like to address for a moment the Thibodeau case, and Mr. Francis talked at great length about that. I think the first thing to be said is something the judge officer has already said, which is that Thibodeau relied heavily on the decision in Lytle or Little, however it's pronounced. That decision has now been thoroughly undercut by the Pennsylvania Supreme Court's decision in Sallie against Option 1, in which it responded to a certified question from this court. Given that the underpinnings of Thibodeau have now been knocked out, that simply doesn't mean a thing. Mr. Francis argues that that's the only case of Pennsylvania importance that has addressed this issue, and he's entirely wrong. There's one case that's critical to this case that he simply does not discuss, and that's Johnson against West Suburban Bank. That's the decision from seven years ago, I think, that Judge Becker wrote, and that dealt with the Truth in Lending Act. And in that case, there was an arbitration provision, and there was an underlying presumption that that arbitration could not be a class action. Therefore, it actually ultimately is parallel to this case. Mr. Francis argues at some length that if the amount in controversy is sufficiently small, then no lawyer would take the case. The problem is that there is now binding authority of this court that says that that is not true when there's a fee-shifting provision. In the Johnson case, Judge Becker wrote very specifically that that concern would be addressed if there's a fee-shifting provision in the statute. And, of course, in both the CROA and the Pennsylvania Credit Services Act, there are fee-shifting provisions. That is simply not a concern here. I'd like only very briefly to come back to a question that Judge Greenberg, you asked about my client's product. I won't go on for any period of time because it's ultimately not, I think, entirely relevant to what the court is sitting to decide. Suffice it to say that my client is not in any way related to the entities you've watched on late-night television offering the Taj Mahal. What it offers is a product that allows people, number one, to keep an eye on their credit reports to identify identity theft, which I'm sure the court recognizes as a serious problem. It also allows people to learn more about what the effect will be on their credit from various commercial transactions, various purchases of automobiles or appliances, other sorts of lending relationships. It is not a credit repair organization of the sort that Congress intended to go after with the Credit Repair Organization Act. And that's an issue that we will properly address before an arbitrator when ultimately this case and the merits of this case go before an arbitration panel. I'd like to discuss very briefly the issue of unconscionability. Yes, sir. Well, I believe, if memory serves me correctly, Your Honor, that Ms. Gay was a member for 10 months, which means then that it's approximately $50. It's about $5 a month as a membership fee. However, as I said before, Johnson Against West Suburban Bank tells us that where fee-shifting is involved, one need not worry about the relatively small amounts of money at issue. Why is that? I mean, because he says, well, no lawyer would take this case and recover his $50. That's probably true. Even when I was in practice, I couldn't really take under $50. But it's probably true, though. Your Honor, I'm not sure that I agree with that speculation because I think at the end of the day that what Judge Becker wrote in Johnson Against West Suburban Bank was entirely correct, which is that if there is the possibility of a fee recovery, that's not controlled by the ultimate amount of damages that a plaintiff might receive. Would there be a possibility of a fee recovery here? Would there be? Certainly. Now, both statutes allow that. However, the opposing counsel says that fee recovery would be precluded under the terms of the agreement. Well, Your Honor, again, as I started out by saying, this case has been a moving target. The argument about that provision, that limitation of damages, is made for the very first time before this panel on oral argument. I thought so. Mr. Francis and his colleagues have never said that word once. I thought that was the case. But notwithstanding that, is that kind of damage limitation in the agreement? There is, in fact, a limitation that says that liability will be limited to the amount paid out by the contracting party. That said, it is possible, and I won't speculate about what would ultimately happen, but it is certainly possible that an arbitrator would look at that and say, well, that's not in accord with the Credit Repair Organization Act. That's a waiver of a provision of the act, a substantive provision of the act, and therefore cannot be enforced. But that's going to be a question ultimately for an arbitrator to decide. Judge Greenberg, if I could come back to the question that you posed, I think that there's another important point here. And again, I direct the court to Johnson against West Suburban Bank. In that case, Judge Becker noted that there's another reason not to be terribly concerned about, in that case, sort of a class action waiver by implication. In this case, an express class action waiver. And that is that he pointed to the fact that the Truth in Lending Act has a governmental administrative enforcement provision, which would serve the public policy purposes of that statute. It allows the Federal Trade Commission to enforce the statute. The Credit Repair Organization Act allows not only for the Federal Trade Commission to enforce the statute, it also allows for the Attorney General of each individual state to do so. So it actually has a rather broader administrative enforcement provision. And we cite, I think, in our principal brief, a number of cases that have, in fact, been brought by law enforcement agencies against actual credit repair organizations. And I say that by distinction from what my client does. And so we know that, in fact, the law enforcement community is hating that. So the policy-based reasons for class action are that much lesser and of less importance. If I might turn, then, to the question of unconscionability, and we do note in our papers that, again, this was not an issue that was ever addressed with respect, at least, to the Credit Repair Organization Act federal statute by Ms. Gay before the district court. That having been said, let me go ahead and address a couple of things. The first is that Virginia law controls here. The contract says as much. And Ms. Gay never, until her reply brief in this court, questioned the applicability of Virginia law to this question. And by that point, of course, it was too late for it to do so. At the end of the day, I'm not sure that it ultimately matters. I was going to say, does it really matter whether it's been – because it frequently happens that there's a question about which law applies, but there's no real difference. Does it matter, really, here in the community? Judge Greenberg, I think at the end of the day that it does not ultimately matter because even if Pennsylvania law were to apply, we know that the two principal decisions of the Pennsylvania appellate courts that have suggested that waivers of the sort we're talking about here, waivers of the judicial forum, waivers of class action mechanism, those being Little and Thibodeau, are not good law. Because the most recent pronouncement from the highest court in Pennsylvania on the certified question in Sally against option one was that Little swept too broadly. In fact, I think that's exactly the language. But aren't they correct that Sally should be limited to the question of mutuality of remedies? Wasn't that really the issue that was before? I don't know that it should be limited in that respect, Your Honor, but that is certainly – I mean, they said to the extent that Thibodeau and Little dealt with the issue before them that Little had swept too broadly. But aren't we really dealing with a separate issue here? It is a somewhat different issue because there's mutuality in this case because both parties have to go to arbitration for almost all claims. There's a little carve-out for injunctive relief. And in Sally, the creditor was allowed to go into court to enforce terms of the mortgage. That's correct. And so, yes, Your Honor, there is that distinction, and it's a viable one. Well, where does that leave us if we say that Little and Thibodeau and Sally are somewhat off-base and so they're not really analogous cases? What that leaves us is that the Pennsylvania courts have never supported the notions that Mr. Francis espouses here before the court. And so, therefore, the burden which rests, of course, upon Ms. Gay to prove unconscionability has not been met. Unconscionability, defined in its most simplistic way under Pennsylvania law, says that there is something inherently unbalanced, inherently unfair in the mechanism. But there's no reason to believe that this provision is inherently unbalanced in the circumstance. Taking us back for a moment to Sally against Option 1, if a provision that was as unbalanced as the one in Sally, which, as Judge Fisher points out, allows the creditor, the mortgage lender, to institute foreclosure proceedings in court, which, as I recall, was the factual scenario in Sally, if that's not unconscionable, and certainly we can agree that that is somewhat unbalanced, then certainly an agreement that has mutual obligation of attending arbitration or participating in arbitration is not unconscionable under Pennsylvania law. Ms. Gay has simply left to one side what was, in the district court, the principal basis for argument, and that was whether there was any inconsistency between the statutes at issue here, the CRAW, the Credit Repair Organization Act, and the CSA, the Pennsylvania Credit Services Act. Is there any claim in this case by the plaintiff that she was damaged, not in the sense that she didn't get what she paid for, but beyond that, for example, when you said you'd protect her from identity theft by doing this or that, and you didn't do it, and she had identity theft, now she's got all this aggravation and everything. Or is the claim limited to what she paid and didn't get? Your Honor, the answer to that question is twofold. One is, no, there were no claims of damages of the sort that you described, identity theft and the ensuing difficulty in life. But she didn't even say that she didn't get what she asked for. Well, the reason, I'm just wondering how much, you know, she's presenting sort of a horrible, well, she's got nothing, there's no way to pursue this, but maybe there's nothing much to pursue. Probably we could settle this case right now if you would hand her $50. I mean, if that's his total damage, then probably, I mean, in a sense, this case ought to be easy to settle. I mean, if that's all he's really, she's out. I mean, it's true that that's not going to remedy it for the world, but I'm just wondering, what's at stake here for her? What's at stake here for Ms. Gay, Your Honor, is $50. Ms. Gay says that that's what she paid, and she says not that she was harmed by the Intersections product. She doesn't even say that the Intersections product did not give her what it promised to give her. What she says is that there were technical problems, assuming for the moment, and we do not concede this point, assuming for the moment that the product falls within the definition of a credit repair product for purposes of the Credit Repair Organization Act, it did not have certain disclosures on it. She paid ahead of time instead of at the back end, but she doesn't say it didn't do what it promised it would do, and she doesn't say that she was in any way harmed. Is there any administrative agency that regulates this in the sense that she could present her complaints to that agency, and the agency could direct it, but then it wouldn't hurt what you had to say for you to change your practices? Is there such an agency? Which agency would state the premise? I believe that the answer to your question is yes, and that's because the enforcement provisions of the CROA, as we've taken to calling it, indeed allows both the Federal Trade Commission and State Attorneys General to sue for enforcement. I presume that those agencies would allow a consumer such as Ms. Gay to come before them and say, I've got a problem, please look into it. If they then looked into it and decided that they believed that she was correct, then they could, in fact, enforce the provisions of the Act. The Pennsylvania Credit Services Act likewise has a provision that allows enforcement by the Attorney General of Pennsylvania. Actually, that's a little more convoluted in a way only because the Credit Services Act incorporates, by reference, the provisions of the unfair trade practice and consumer protection law. But that statute's enforcement provisions allow the Attorney General of Pennsylvania to take such a step. Thank you, Mr. Fine. Thank you, Your Honor. Mr. Francis? See, I was wondering, Mr. Francis, why there is this litigation. Because, for most people, I wrote an opinion about what constituted citizenship. It involved quite a bit of money for diversity purposes, for trust. Apparently, there was a big conflict among the circuits, a four-way split, and apparently the case ended there. There was no petition for re-hearing and no petition for certiorari. And from an intellectual point of view, that's a really important point. But maybe the plaintiff who lost, well, he's only got a case going. You know, he needs to resolve his matter. And he wasn't pursued any further. The question is, what's really involved for your client here? Did she have any actual losses? Or did she get, I guess, a mere view of what she paid for? Well, Your Honor, as the Court is aware, we haven't even gotten to this step of getting into the case. But to answer your question, what she wants is the money that she paid. And she wants the ability to bring this claim as the law provides. And she wants to be able to pursue punitive damages against this defendant. She wants to be able to recover all actual damages. She wants to be able to have a lawyer represent her in this case on a class action. And this contract insulates the defendant from that. That is not permitted by these statutes or Pennsylvania laws. Is there any actual damage, though, which is distinct from punitive damages beyond the fact? In other words, I can figure out what I said. For example, they didn't do something insurable because of that. There was a debt of defense or something. Is there any damage of that kind? There's no claim that there is some horrible thing that occurred beyond the fact that she paid for a product which is worthless. And she wants her money back. And the bottom line is that the Court upholds the district court decision. She will have nobody to pursue that claim for her because neither I nor any member of the consumer bar is going to step forward and pursue this case for $50 in arbitration. And that is exactly why Pennsylvania courts and this circuit has endorsed the class action mechanism for a small value claim. Judge Fisher, you were on the Weiss v. Regal Collections panel. In that case, it involved the Fair Debt Collection Practices Act and a Rule 68 offer of judgment. This court has endorsed class actions as a vehicle for vindicating small harms. That's what this is. And that's what this litigant wants is the right to be able to pursue her claim on a class basis. If she had $500,000 in actual damages, of course we wouldn't be arguing unconscionability under arbitration because it doesn't matter where that's litigated. The person can get recourse. Johnson v. West Suburban Bank, by the way, I did in my opening refer to it, and if referred to, it's distinguishable. But Chief Judge Becker outlined why that situation was different from this one. Because in that case, the 1% net worth cap limitation on the FDCPA actually had the plaintiffs, the plaintiff class receiving less. If the case went forward on a class action in federal court, then if it was individually litigated in arbitration, because under the FDCPA, individual consumers can receive up to $1,000 in statutory damages, and there was attorney's fees, and there was no question there was attorney's fees there. So that was the opposite scenario. Here, it's arguably a $50 claim plus punitives plus attorney's fees. Those type of claims, for all the reasons that Dale and Troyer and Christian from the First Circuit announced, that's why these class action waivers are a problem, because they don't allow the consumer to vindicate the claim. And specifically... Well, I'm not aware of any authority which provides that where a statute provides for both private enforcement and also through administrative enforcement, the mere fact that the consumer can have the latter means that with that claim, that is permitted to be waived. Except if that person signs an agreement like she did here. Right, but what we have here... It's a circular argument of sorts, but in order to prevail here, as you've candidly said, you need to show that disagreement was unconscionable, and even if we give you the fact that you can use Pennsylvania law, you can't ignore the public enforcement. I understood that there was only three minutes reserved, and I think that... I'm just a little concerned that the schedule is moving along. I concur with that, and I probably asked a question that took them over, and gave them a chance to answer that question, but the red light is on. If I may just conclude, Your Honors, under Johnson v. Suburban Bank, even the Third Circuit recognized that an arbitration clause can be struck down when it doesn't provide that the right can be vindicated in the arbitral form. Even Johnson says that. That is this situation, that the wrong and the claim cannot be vindicated in the arbitral form. Thank you, Mr. Francis. Thank you, Your Honors, for your consideration. We thank both counsel for excellent arguments, and we will take the matter under advisement. You've been a little generous on the red light today, and it's not a signal to the next set of litigants, but I'm glad that Judge Alice Herb reminded me.